**FILED**

**July 11, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 1:00 P.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Tara Marshall | ) Docket No. 2015-01-0147 |
| | ) |
| v. | ) |
| | ) State File No. 63950-2014 |
| Mueller Company, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Audrey A. Headrick, Judge | ) |

---

### Affirmed and Certified as Final – Filed July 11, 2016

---

In this appeal of the trial court's compensation hearing order, the employee challenges the trial court's denial of an increase in the employee's permanent partial disability benefits following a court-approved settlement agreement. At all relevant times, the employee continued to work for the employer. At the time of her injury, the employee's hourly wage included a summer hours' bonus. However, when the period of compensation set out in the settlement agreement ended in October 2015, the employee's hourly rate of pay no longer included the bonus. Relying on Tennessee Code Annotated section 50-6-207(3)(B) (2015), the employee contends the wages she received at the end of the period of compensation reflected in the settlement agreement were less than her wages at the time of her injury, entitling her to increased benefits. The trial court found the employee was not entitled to increased benefits, and the employee has appealed. Having carefully reviewed the record, we affirm the trial court's decision and certify the order as final.

Judge David F. Hensley delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Jeffrey W. Rufolo, Chattanooga, Tennessee, for the employee-appellant, Tara Marshall

Joseph R. White, Chattanooga, Tennessee, for the employer-appellee, Mueller Company

1

## Factual and Procedural Background

This case involved a single issue in the trial court, which is now the issue on appeal, namely, whether Tara Marshall ("Employee") is entitled to increased permanent partial disability benefits beyond the benefits she received pursuant to a court-approved settlement. The facts are undisputed. Employee sustained a work-related left leg fracture on August 4, 2014 while in the course and scope of her employment with Mueller Company ("Employer"), which Employer accepted as compensable and for which benefits were voluntarily provided. Employee returned to work for Employer on February 3, 2015. The parties ultimately entered into an agreement resolving Employee's claim, which the trial court approved on July 31, 2015. The parties acknowledged that the 31.5 week period represented by the initial award of permanent partial disability benefits would end on October 13, 2015. Because the settlement agreement was approved prior to that date, the parties included language in the agreement stating "[t]he determination as to whether Employee will be entitled to any additional [permanent disability] benefits cannot be made until the initial compensation period expires on October 13, 2015, per Tennessee Code Annotated section 50-6-207(3)."

On October 13, 2015, Employee's hourly rate of pay, excluding overtime, was $18.16. At the time of her August 14, 2014 injury, she was earning $19.56 per hour, which included a base rate of $17.86 per hour, a "summer hours' bonus" of $1.50 per hour, and a "shift differential" of $.20 per hour. The "summer hours' bonus" was part of a collective bargaining agreement entered into between Employer and the union in which Employee was a member, which provided, in part, as follows:[1]

> The Company and the Union (USW) have mutually agreed that the current business environment is in a recession and for the Company to take full advantage of the lowest energy rates offered by [TVA] we are adopting, on a non-precedent setting basis, irregular shift hours. Beginning on Sunday June 2nd, 2013 at 8:00 PM and ending October 4, 2013 for the Iron Melt, Foam Molding, Cleaning Room, General Foundry Labor and No-Bake Iron Departments.
>
> . . . .
>
> Employees working in the [a]ffected departments will receive a $1.00 per hour shift premium on top of their contractual shift premium during the irregular shift schedule.

---

[1] Although the collective bargaining agreement provided for employees working in the affected departments to receive a $1.00 per hour shift premium, the parties stipulated that Employee's rate of pay at the time of her injury "included a summer hours bonus of $1.50 per hour and a $0.20 shift differential increase in comparison to [Employee's] base rate of pay ($17.86)."

The parties stipulated that the collective bargaining agreement remained in effect and applied to Employee. The parties also agreed that in 2015, the "summer hours' bonus" ended on September 30, 2015, at which time all affected employees returned to their regular base rate of pay.

On November 10, 2015, Employee filed a petition for benefit determination relying on Tennessee Code Annotated section 50-6-207(3)(B) (2015), seeking increased permanent partial disability benefits. The relevant portion of section 50-6-207(3)(B) states:

> If at the time the period of compensation provided by subdivision (3)(A) ends, the employee has not returned to work with any employer or has returned to work and is receiving wages or a salary that is less than one hundred percent (100%) of the wages or salary the employee received from his pre-injury employer on the date of injury, the injured employee may file a claim for increased benefits. If appropriate, the injured employee's award as determined under subdivision (3)(A) shall be increased by multiplying the award by a factor of one and thirty-five one hundredths (1.35).

Tenn. Code Ann. § 50-6-207(3)(B).[2] In addition to increased benefits resulting from an employee's loss of employment or reduced wages after a work-related injury, an injured worker's award may also be affected by additional factors identified in subdivisions 50-6-207(3)(B)(i)-(iii) concerning the employee's education level, age, and the unemployment rate in the county in which the employee was employed on the date of the work-related injury. Tenn. Code Ann. § 50-6-207(3)(B)(i)-(iii). The parties stipulated that, in the event Employee is entitled to increased benefits, the amount of that increase would be $14,634.28, which contemplates applying the 1.35 multiplier as well as a multiplier of 1.2 based upon Employee's age at the time the original period of compensation ended. *See* Tenn. Code Ann. § 50-6-207(3)(B)(ii).

The trial court determined that, at the time the original period of compensation ended, Employee's "hourly pay had returned to her normal base rate of pay of $17.86" as provided in the collective bargaining agreement, which was not less than her base rate of pay at the time of her injury.[3] Concluding that the phrase "if appropriate" in section 50-

---

[2] Effective April 14, 2016, Tennessee Code Annotated section 50-6-207(3)(A) was amended to identify the period of compensation determined by multiplying the employee's impairment rating by 450 weeks as the "original award." Section 50-6-207(3)(B) was amended to identify an increased original award resulting from modification of the original award by applying any of the relevant factors set out in that section as the "resulting award." Hereinafter we have used the terms as defined in the 2016 amendment.

[3] The parties' Pre-Hearing Statements and briefs on appeal state that, at the expiration of the 31.5 week compensation period, Employee's hourly rate was $18.16. This is an increase of $.30 over her hourly base rate at the time of her injury.

3

6-207(3)(B) "indicates an employee is only entitled to increased benefits if the Court finds that the statute's preceding sentence is satisfied," the trial court found that increased benefits "are not appropriate" and denied Employee's request for increased permanent partial disability benefits. Employee has appealed, contending that under a plain reading of section 50-6-207(3), she is entitled to the stipulated amount of increased permanent partial disability benefits.

## Standard of Review

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A) Violate constitutional or statutory provisions;
(B) Exceed the statutory authority of the workers' compensation judge;
(C) Do not comply with lawful procedure;
(D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;
(E) Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute. "The interpretation of a statute and its application to undisputed facts involve questions of law," which we review *de novo* with no presumption of correctness. *Seiber v. Reeves Logging*, 284 S.W.3d 294, 298 (Tenn. 2009). *See also Cunningham v. Williamson Cnty. Hosp. Dist.*, 405 S.W.3d 41, 43 (Tenn. 2013); *Payne v. D and D Electric*, No. 2014-01-0023, 2016 TN Wrk. Comp. App. Bd. LEXIS 21, at *6 (Tenn. Workers' Comp. App. Bd. May 4, 2016).

## Analysis

This case presents an issue of first impression involving the application of Tennessee Code Annotated section 50-6-207(3)(B) (2015). Analysis of the issue is aided by considering the historical context within which Employee makes her request for increased benefits.

Section 50-6-207(3)(B) has as its genesis the 1992 reforms to the Workers' Compensation Act. An important element of those reforms was that, for injuries arising on or after August 1, 1992, an injured worker's permanent partial disability was limited

4

to 2.5 times the employee's permanent medical impairment rating if the employee had returned to work for the pre-injury employer *at a wage equal to or greater* than the wage the employee was receiving at the time of the injury. *See* Tenn. Code Ann. § 50-6-241(a)(1) (1992). Additionally, the 1992 reforms provided for "reconsideration" of an employee's industrial disability in cases where the employee subsequently lost his or her employment with the pre-injury employer within the time period provided by statute. Tenn. Code Ann. § 50-6-241(a)(2) (1992). The amount by which a reconsidered award could be enlarged was governed by section 50-6-241(b) (1992).

Section 50-6-241 was further amended in 2004 to reduce the cap on the multiple of an award of permanent partial disability from 2.5 times the impairment rating to 1.5 times the impairment rating for injuries occurring after on or after July 1, 2004, where the employee returned to work for the pre-injury employer earning the pre-injury wage. Tenn. Code Ann. § 50-6-241(d)(1)(A) (2005).[4] The 2004 amendments extended reconsideration rights to employees who, within the number of weeks applicable pursuant to statute, either lost their employment with the pre-injury employer or suffered *a reduction in wages* to a level less than the wage the employee was earning at the time of the injury. *See* Tenn. Code Ann. § 50-6-241(d)(1)(B)(i) and (ii) (2005).

Thus, after the effective date of the 2004 reforms, section 50-6-241 provided for an employee to receive permanent partial disability benefits in excess of the 1.5 cap under two circumstances: (1) where the employee had not returned to work for the pre-injury employer at the pre-injury wage at the time the employee's claim was resolved, or (2) where the employee, after returning to work for the pre-injury employer, suffered a loss of employment or experienced a reduction in wages to a wage less than what the employee was earning at the time of the injury, provided that such loss of employment or reduction in wages occurred within a specified time. In 2010, statutory provisions governing reconsideration claims were amended to provide that a reduction of employees' hourly rate of pay or number of hours "due to economic conditions" did not entitle the employees to "reconsideration of their claims under this section if the reduction in pay or reduction in hours affected at least fifty percent (50%) of all hourly employees operating at or out of the same location." Tenn. Code Ann. § 50-6-241(d)(1)(B)(i) and (ii) (2010).

The Workers' Compensation Reform Act of 2013 significantly altered an employee's potential award of permanent partial disability benefits. Among some of the most significant changes was the deletion of subsections 50-6-241(a) and (b) for injuries occurring on or after July 1, 2014. *See* 2013 Tenn. Pub. Acts 289, § 89. Permanent partial disability benefits under section 50-6-207(3) were restructured to provide that an

---

[4] The 2004 amendments also provided limitations to the recovery for injuries to certain "scheduled members." Because this distinction is no longer relevant, we omit discussion of the specific provisions regarding these scheduled members.

5

employee shall be paid specified benefits "at the time the injured employee reaches maximum medical improvement . . . for the period of compensation, which shall be determined by multiplying the employee's impairment rating by four hundred fifty (450) weeks." Tenn. Code Ann. § 50-6-207(3)(A) (2014). Further, the employee "shall receive these benefits . . . whether the employee has returned to work or not." *Id.* Subdivision 50-6-207(3)(B) was also added, enabling an employee to file a claim for increased permanent partial disability benefits "[i]f at the time the period of compensation provided in subdivision (3)(A) ends, the employee has not returned to work with any employer or has returned to work and *is receiving wages or a salary that is less than one hundred percent (100%) of the wages or salary* the employee received from his pre-injury employer on the date of injury." Tenn. Code Ann. § 50-6-207(3)(B) (emphasis added). An employee's request for increased benefits under section 50-6-207(3)(B) is initiated "by filing a new petition for benefit determination . . . no more than one (1) year after the period of compensation provided in subdivision (3)(A) ends." Tenn. Code Ann. § 50-6-207(3)(D).

The 2013 Reform Act does not define "wages" as used in section 50-6-207(3)(B) (2015), nor did earlier provisions of the Tennessee Workers' Compensation Act define "wages." The Tennessee Supreme Court first addressed the term "wage" in the context of temporary disability benefits, holding that the terms "wage" and "average weekly wage" are not synonymous. *Wilkins v. The Kellogg Co.*, 48 S.W.3d 148, 152-53 (Tenn. 2001). Based on the holding in *Wilkins*, the Supreme Court subsequently determined that the term "wage" as used in section 50-6-241(a)(1) did not mean "average weekly wage"; rather, it "means the hourly rate of pay for an employee who is compensated on an hourly basis." *Powell v. Blalock Plumbing & Elec. & HVAC*, 78 S.W.3d 893, 898 (Tenn. 2002).

The Supreme Court's Special Workers' Compensation Panel has considered whether an employee was entitled to an increase in permanent partial disability benefits under section 50-06-241(d)(1) following a layoff, during which time the employee continued to receive employment benefits based on a collective bargaining agreement that resulted in "take home compensation reduced by five percent." *Edwards v. Saturn Corp.*, No. M2007-01955-WC-R3-WC, 2008 Tenn. LEXIS 617, at *7 (Tenn. Workers' Comp. Panel Sept. 25, 2008). Addressing whether the "wage" the employee received during his layoff was equal to or less than the "wage" he was receiving at the time of his injury, the Panel concluded that the legislature did not intend for the statutory cap on permanent partial disability benefits to be removed under the circumstances of the case. Finding the reduction in the employee's take-home pay to be analogous to an employer's deciding to reduce the wages of its entire workforce, the Panel stated "[i]t does not appear to this Panel that this is the type of situation that the General Assembly envisioned when it drafted the workers' compensation laws." *Id.* at *29.

Two years later, in *Blake v. Nissan N. Am., Inc.*, No. M2009-02173-WC, 2010 Tenn. LEXIS 1022 (Tenn. Workers' Comp. Panel Nov. 10, 2010), the Panel addressed

6

whether a reduction in a worker's hours was a sufficient basis to permit the trial court to make an award in excess of the cap provided in section 50-6-241(a)(1). The Panel observed that *Blake* "falls into a middle ground" between *Edwards* and *Powell*, noting that the employee "clearly sustained a loss of income after making a meaningful return to work." *Id.* at *12. However, the loss of income was not related to the employee's work injury, "but instead was part of a plant-wide reduction in hours" intended to save jobs. *Id.* In contrast to the 5% reduction in compensation in *Edwards* that was the result of a collective bargaining agreement, *Blake* involved a 20% income reduction with no connection to a collective bargaining agreement. While the appeal in *Blake* was pending, the General Assembly amended section 50-6-241(d)(1)(B) to provide that "[e]mployees who continue in their employment after a reduction in pay or a reduction in hours due to economic conditions shall not be entitled to reconsideration of their claims . . . if the reduction . . . affected at least 50% of all hourly employees operating at or out of the same location." Tenn. Code Ann. § 50-6-241(d)(1)(B) (2010).[5] The Panel in *Blake* found the amendment to be consistent with the Panel's analysis in *Edwards* and its determination that a general reduction in wages "caused by economic conditions and undertaken for the purpose of saving jobs, will not automatically open previously 'capped' settlements to reconsideration." *Id.* at *13. Noting that the 2010 amendment became effective after the appeal in *Blake* was heard and therefore was not controlling, the Panel stated that it did, however, "inform as to the legislative intent related to how reduction in force should impact a determination of whether or not there has been a meaningful return to work." *Id.* at *13-14. The Panel determined that the amendment supported "the application of *Edwards* and the lower cap, rather than *Powell* and the higher cap," and concluded "that the trial court erred by finding that Employee did not have a meaningful return to work as a result of Employer's plant-wide reduction of working hours." *Id.* at *14.

In 2012, the Panel addressed a reconsideration claim filed after a 2009 collective bargaining agreement that resulted in a $2.50 per hour wage reduction for all union employees. *Robinson v. Bridgestone Ams. Tire Operations, LLC*, No. M2011-02238-WC-R3-WC, 2012 Tenn. LEXIS 840 (Tenn. Workers' Comp. Panel Nov. 21, 2012). Because of the reduction, the employee's hourly rate was $0.98 less than it was at the time of his 2005 work-related injury. The employee asserted that "the across-the-board reduction in wages in 2009 triggered his right to a reconsideration of his 2006 settlement." *Id.* at *3. Relying on *Edwards* and *Blake*, the Panel stated that the purpose of the two-tiered benefit system created in section 50-6-241 "is to protect the interests of several categories of employees, including (1) those who are unable to return to work for their employer because of their injuries, (2) those who are able to return, but at a lesser wage because of the effects of their injuries, and (3) those who, for reasons outside their control, are placed into the job market to compete against unimpaired applicants." *Id.* at

---

[5] The amendment to subdivisions 50-6-241(d)(1)(B)(i) and (ii) applied to reconsideration of claims that were approved or adjudicated on or after July 1, 2010. 2010 Tenn. Pub. Acts 1034, § 3.

*11. The Panel found no basis in the statute or in the case law "to conclude that the General Assembly intended to grant a windfall to employees who returned to work at their pre-injury wage and continued to work for their pre-injury employer, but who, at some later time, are affected by an across-the-board reduction of pay as part of the employer's even-handed attempts to address deteriorating market conditions such as those that affected the automotive industry beginning in 2008." *Id.* at *12.

Lastly, the most recent appellate opinion addressing the effect of a reduction in an employee's wage on the right to increased benefits pursuant to section 50-6-241 is *Young v. Bridgestone Ams. Tire Operations, LLC*, No. M2011-02551-WC-R3-WC, 2013 Tenn. LEXIS 10 (Tenn. Workers' Comp. Panel Jan. 10, 2013). Unlike the *Edwards* and *Robinson* cases, which involved reconsideration claims, the issue in *Young* concerned whether the 1.5 multiplier in section 50-6-241 applied to the employee's permanent partial disability award. The employee contended that, because his hourly wage was reduced to a rate less than he earned at the time of his injury due to a collective bargaining agreement, his permanent partial disability benefits should not be capped by the 1.5 multiplier in section 50-6-241(d)(1)(A). The trial court found the wage reduction "was not as a result of his being injured or unable to work," and that the award of permanent partial disability benefits was capped at 1.5 times his medical impairment rating. *Id.* at *4. Discussing *Edwards*, *Blake*, and *Robinson*, the Panel adopted *Robinson's* analysis, citing in particular the rationale behind the two-tiered system created in section 50-6-241. *Id.* at *11. The Panel concluded that the trial court correctly applied section 50-6-241(d)(1)(A) to limit the employee's award of permanent disability benefits. *Id.* at *12.

Having reviewed the statutes and the case law existing prior to the 2013 Reform Act, we turn to the instant case. Employee asserts the trial court "relied heavily" on *Edwards*, *Robinson*, and *Young* "to deny an award of increased benefits," contending the employees in those cases were "denied an increase in additional permanent benefits due to the state of the economy" and that "the basis for these decisions was found in the 2010 [a]mendment" to section 50-6-241(d)(1)(B)(i). Employee's assertion that the basis for these decisions is found in the 2010 amendment is incorrect, as the 2010 amendment was not applicable to any of these cases. *Young* and *Edwards* were decided prior to the 2010 amendment, and *Robinson* involved reconsideration of a settlement approved prior to the July 1, 2010 effective date of the 2010 amendment.

Employee contends section 50-6-207 of the 2013 Reform Act is controlling and that the deletion of the language from the 2010 amendment concerning "economic conditions" confirms that the General Assembly did not intend economic considerations to affect a request to enlarge benefits. Advocating a "plain reading of the statute," Employee concludes that she "is entitled to her stipulated amount of increased benefits" because, while she was employed by Employer on the date the original period of compensation ended, she was "receiving wages or a salary that is less than one hundred

percent (100%) of the wages or salary [she] received from [the] pre-injury employer on the date of the injury." Tenn. Code Ann. § 50-6-207(3)(B) (2015). We disagree with Employee's conclusion.

The 2013 Reform Act replaced what the Panel described in *Robinson* as the "two-tiered benefit system created in [Tennessee Code Annotated section] 50-6-241" with section 50-6-207(3)(B), which includes provisions designed to protect the interests of several categories of employees, including those who are unable to return to work because of the effect of their work injuries as well as those who are able to return to work, but at a lesser wage or salary than they were receiving at the time of their injury. Section 50-6-207(3)(B) addresses the second of these categories by providing that "*[i]f appropriate*, the injured employee's award as determined under subdivision (3)(A) shall be increased by multiplying the award by a factor of one and thirty-five one hundredths (1.35)." *Id.* (emphasis added). In addition to the provision authorizing an increased award as a result of reduced wages or loss of employment, section 50-6-207(3)(B) contains subdivisions that provide for a permanent partial disability award to be further increased where the employee is earning reduced wages or has suffered a loss of employment if the employee meets additional factors related to the employee's education, age, and unemployment rate in the county in which the pre-injury employer is located. *See* Tenn. Code Ann. § 50-6-207(3)(B)(i)-(iii).

Employer contends that when the original period of compensation expired on October 13, 2015, Employee's base rate of pay was $18.16, which was $0.30 greater than her base pay rate of $17.86 on the date of her injury. Employer notes that, as in "*Edwards, Young,* and *Robinson,* the decrease in [Employee's] hourly rate was completely unrelated to her injury," and that "[a]ll employees in the Melt Department received the same reduction in pay, regardless whether they had workers' compensation claims." Employer emphasizes that Employee's "hourly rate had decreased beginning in October for the two years prior to her injury," and that Employee "and all other similarly situated employees will go back to the summer hours' pay later this year when it is applicable."

Employer contends that if Employee's argument is accepted, she will "be in a better position than she would have been if she . . . had been injured during spring, fall or winter," and that if she had been injured in the spring, fall, or winter, there would be no argument whether she would be entitled to any additional compensation because her base rate of pay at the end of the original compensation period would have been higher than when she was injured. Employer notes that Employee's hourly rate of pay returns to her base rate each October regardless of whether she has suffered any injuries. Employer argues that Employee "should not receive increased compensation just because she was injured during the summer months when her pay was temporarily increased," and that Employer "should not be unfairly penalized, and [Employee] should not receive an unearned windfall."

9

In contemplating the unusual set of circumstances with which we are presented in this case, we have considered pre-2013 Reform Act statutory provisions and case law concerning the meaning of "wage." We have also considered the 2013 Reform Act's deletion of sections 50-6-241(a) and (b), the revised method of calculating permanent partial disability benefits in the 2013 Reform Act, and the Reform Act's conditioning an employee's entitlement to increased benefits at the end of the original compensation period upon the employee's "receiving wages or a salary that is less than one hundred percent (100%) of the wages or salary the employee received from the pre-injury employer." In view of the historical context in which "wages" came to be defined, we find it significant that the General Assembly did not define "wages" as used in section 50-6-207(3) or otherwise indicate a different meaning of "wages" than has been established in prior opinions. Moreover, the rules and regulations adopted by the Bureau of Workers' Compensation both before and after the effective date of the 2013 Reform Act do not define the term. Accordingly, we find no basis in the language of section 50-6-207 to conclude that the General Assembly intended that an employee receiving a "summer hours' bonus" or a "shift differential" at the time the employee suffers a work injury to be entitled to increased benefits under the facts and circumstances presented in this case. Rather, the General Assembly's failure to provide a definition of "wages" under these circumstances suggests that the interpretation applied under pre-reform law would continue to be applicable to post-reform cases.

Additionally, it would be inconsistent for similarly-situated employees to be entitled to increased permanent disability benefits depending on when the injury occurred, when an employee's original period of compensation ended, or what shift an employee was working when the injury occurred versus when the original period of compensation ended. Were it otherwise, an employee injured while working overtime hours could be entitled to increased benefits if, at the time such employee's original period of compensation ends, the employee is no longer working overtime. Even when the workers' compensation statutes were remedially construed, the courts determined that such an interpretation was inconsistent with legislative intent. *See King v. Gerdau Ameristeel US, Inc.*, No. W2011-01414-Wc-R3-WC, 2012 Tenn. LEXIS 488, at *7 (Tenn. Workers' Comp. Panel July 30, 2012) ("Although [the employee] has work restrictions that reduce the amount of overtime pay he receives, overtime pay contributes to his average weekly wage, not his hourly rate of pay. We conclude that [the employee] has returned to work on a full-time basis at the same hourly rate of pay and has made a meaningful return to work."). In this case, Employee's "reduction" in wages was the result of the end of a summer hours' bonus that is effective every year. It applies to all employees working in certain departments, and is directly related to economic conditions and a collective bargaining agreement designed to alleviate the effects of those conditions. Moreover, and most importantly, the elimination of the bonus does not affect Employee's base rate of pay, that is, her hourly wage, which was higher at the time the original compensation period ended than at the time of her injury. Applying a fair and impartial interpretation of the 2013 Reform Act "in accordance with basic principles of

statutory construction," as mandated by section 50-6-116 (2015), we conclude that Employee is not entitled to increased benefits.

## Conclusion

For the above reasons, we conclude that the trial court correctly determined that Employee was not entitled to increased permanent partial disability benefits. Additionally, we find that the trial court's decision does not violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, the trial court's order is affirmed and certified as final.

David F. Hensley, Judge
Workers' Compensation Appeals Board

11

**FILED**

**July 11, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 1:00 P.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Tara Marshall | ) | Docket No. 2015-01-0147 |
| | ) | |
| v. | ) | |
| | ) | State File No. 63950-2014 |
| Mueller Company, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 11th day of July, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Jeffrey W. Rufolo | | | | | X | jrufolo@summersfirm.com |
| Joseph R. White | | | | | X | jrw@smrw.com |
| Audrey A. Headrick, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

_Matthew Salyer_

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov